## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:22-cr-165 (JAM) |
| CHRISTOPHER POLLER,<br>*Defendant*. | |

## ORDER DENYING MOTION TO SUPPRESS

This is a case that arises at the intersection of the Fourth Amendment and the technological capabilities of an Apple iPhone. The defendant Christopher Poller allegedly stashed two guns and illegal drugs on the front seat of his car. He parked the car on a road in front of his apartment and then went inside. Because the windows of the car were heavily tinted, he probably thought no one could see inside. But he was mistaken. The police came along and— by holding up an iPhone to the window of the car and activating the iPhone's camera viewfinder function—they could clearly see the guns and drugs inside the car.

Poller moves to suppress the guns and drugs on the ground that the police's use of the iPhone amounted to a warrantless "search" in violation of the Fourth Amendment. I do not agree. First, I conclude that Poller had no reasonable expectation of privacy against the police's use of sense-enhancing technology like the camera function of an iPhone that is in general public use. Second, to the extent that the police placed the iPhone against the window of the car, I conclude that this physical trespass was incidental because it was not necessary to the ability of the iPhone to expose what was inside. Accordingly, I will deny the motion to suppress.

**BACKGROUND**

On May 3, 2022, the police were conducting surveillance when they saw an Acura automobile arrive and park in front of a multi-unit apartment building at 58 Craftwood Road in Waterbury, Connecticut.[1] They saw Poller get out of the car and enter one of the apartments.[2] A team of officers then went inside to arrest him on a pending arrest warrant.[3]

Soon a group of detectives went to examine the car.[4] Body-cam footage shows the detectives walking around the car which had heavily tinted windows.[5] One of the detectives tried to open the door to the car but it was locked.[6]

Another detective then held up an iPhone and said: "Hell, yeah. Watch this."[7] He then placed the phone on and near the passenger-side windows of the car.[8] Using the iPhone's camera viewing function the detective could see through the tint into the interior of the car.[9] The detective then said aloud that it looks like there are "two 15s" in an apparent reference to two firearms that were wedged between the front seats and center console.[10]

---

[1] Doc. #28-1 at 3; Defendant's Exhibit ("Dx") A at 4 (¶¶ 6, 7); Doc. #31 at 2-3; Government's Exhibit ("Gx") 3 at 7.
[2] Doc. #28-1 at 2; Doc. #31 at 2-3; DxA at 4 (¶ 6).
[3] Doc. #28-1 at 3; DxA at 4 (¶ 7); Doc. #31 at 3; Gx3 at 8.
[4] DxA at 4; Gx3 at 8.
[5] DxB (body camera footage) at 16:07:51-16:07:57.
[6] *Id.* at 16:07:43.
[7] *Id.* at 16:07:50-16:07:52.
[8] DxC (body camera footage) at 16:08:17-16:08:30.
[9] *Ibid.*
[10] DxC at 16:08:39-16:08:41.



The detective then walked around to the left front-side window and again held up the iPhone to the window.[11] Pointing to the image on the phone screen, he remarked "you got that one right there, and that one over there."[12] One of the other detectives asked, "All phones do that?" And the detective replied, "Yeah."[13]

Finally, the detective walked around to the front of the car, cupped his hands around his eyes, and looked into the windshield.[14] He said, "I see a bag of heroin on the front seat, two guns, . . . and looks like . . . probably a bag of drugs right there in the passenger seat."[15]

---

[11] *Id.* at 16:08:51-16:08:54.
[12] *Ibid.*
[13] *Id.* at 16:08:54-16:08:57.
[14] *Id.* at 16:09:38.
[15] *Id.* at 16:09:54-16:10:06.

3

The detectives eventually used what they saw to apply for a warrant to search the car.[16] They seized the contraband that now forms the basis for the federal indictment against Poller. But now Poller has moved to suppress this evidence.[17]

### DISCUSSION

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The key question here is whether the detectives engaged in a "search" for purposes of the Fourth Amendment when they used an iPhone to allow them to see through the car's tinted windows and to observe contraband inside.

Not all law enforcement investigative activity amounts to a "search" within the meaning of the Fourth Amendment. Instead, "[t]he Supreme Court has articulated two tests for determining whether a police officer's conduct constitutes a 'search' for purposes of the Fourth Amendment: whether the police officer physically intrudes on a constitutionally protected area and, if not, whether the officer violates a person's reasonable expectation of privacy." *United States v. Weaver*, 9 F.4th 129, 141 (2d Cir. 2021) (*en banc*).[18]

Poller argues that the police engaged in a "search" of his car under both of these tests. First, he contends that the police's use of the iPhone to see inside his car violated his reasonable expectation of privacy. Second, he contends that the police physically trespassed or intruded upon his car in order to see what was inside. I will address both arguments in turn.

---

[16] DxA at 4-5 (¶ 9).
[17] Doc. #28.
[18] Unless otherwise noted, this ruling omits all internal quotation marks, citations, brackets, and other alterations in its quotations and citations of case decisions.

### *Reasonable expectation of privacy*

One of the tests to decide if a "search" has occurred is whether the police have violated a person's reasonable expectation of privacy. It has long been the rule that a person has a reasonable expectation of privacy in an object or area if they have exhibited a subjective expectation of privacy with respect to the object or area and if this expectation is also one that society recognizes as reasonable. *See, e.g.*, *ACLU v. Clapper*, 785 F.3d 787, 821-22 (2d Cir. 2015) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

As an initial matter, Poller does not suggest that it violates a reasonable expectation of privacy for the police—while standing on a public street where they have a right to be—to peer inside the windows of a parked car to see if there is contraband inside. The Supreme Court has foreclosed such an argument, holding that a police officer did not violate a driver's reasonable expectation of privacy when he used a flashlight to look inside the windows of a car that was subject to a traffic stop. *See Texas v. Brown*, 460 U.S. 730, 739-40 (1983).

But Poller says this case is different because the police used an iPhone to see what was inside the car. He relies on *Kyllo v. United States*, 533 U.S. 27 (2001), in which the Supreme Court ruled that under certain circumstances law enforcement's use of advanced technology may violate a person's reasonable expectation of privacy. The law enforcement officers in *Kyllo* suspected that someone was using high-intensity lamps to cultivate marijuana inside a home, and so they stationed themselves in a car across the street and used a mobile thermal imaging device to detect heat signatures that were emanating from the walls of the home.

The Supreme Court ruled that this constituted a search for purposes of the Fourth Amendment because law enforcement used technology that was not in general public use and because the technology allowed law enforcement to learn details about what was occurring

inside the home. "Where, as here, the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." *Id.* at 40.

As the Seventh Circuit has explained, the upshot of *Kyllo* is that "even an extremely invasive technology can evade the warrant requirement if it is in general public use." *Naperville Smart Meter Awareness v. City of Naperville*, 900 F.3d 521, 526 (7th Cir. 2018). And although the Supreme Court has offered "little guidance" about what it means for technology to be in general public use, "*Kyllo* itself suggests that the use of technology is not a search when the technology is both widely available and routinely used by the general public." *Id.* at 527.[19]

Therefore, *Kyllo* does not help Poller here. That is because Poller does not argue that either the iPhone itself or its camera function are *not* in general public use. Indeed, cellphones are "now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014). Similarly, "cameras are in general public use," as "[n]ow more than ever, cameras are ubiquitous, found in the hands and pockets of virtually all Americans, on the doorbells and entrances of homes, and on the walls and ceilings of businesses." *United States v. Tuggle*, 4 F.4th 505, 516 (7th Cir. 2021). And Poller himself acknowledges that "[a] Google search for the terms 'iphone camera tinted windows' yields a litany of local television news and

---

[19] *See also* Christopher Slobogin, *Peeping Techno-Toms and the Fourth Amendment: Seeing Through Kyllo's Rules Governing Technological Surveillance*, 86 MINN. L. REV. 1393, 1402-05 (2002) (discussing potential range of meanings for "in general public use" including most broadly "whether the technology is generally available to the public" or more restrictively "how often does the public use a particular type of technology" or most restrictively whether the technology is in "general public use for a particular purpose").

automotive magazine or blog articles from 2022 explaining that 'thieves can use cell phone cameras to see through tinted windows.'"[20]

In short, the use by law enforcement of technology that is in general public use does not—without more—violate a person's reasonable expectation of privacy. No doubt some people may be surprised to learn that the ordinary camera function of an iPhone can be used to see through the tint of car windows. But the relevant inquiry under *Kyllo* turns on whether the technology is in general public use, not whether one may be surprised that the police have used commonly available technology for investigative purposes. Accordingly, the detectives did not violate Poller's reasonable expectation of privacy by using an iPhone to see through the tint of the windows on his car.

### Physical intrusion

A second test for deciding whether a "search" has occurred is whether the police—while acting for the purpose of acquiring information—engage in a trespass or other unlicensed physical intrusion upon a person, their house, their papers, or their effects. *See Florida v. Jardines*, 569 U.S. 1, 7 (2013); *United States v. Jones*, 565 U.S. 400, 406 n.3, 408 n.5 (2010). Under this physical-intrusion-based theory, "[w]hile law enforcement officers need not shield their eyes when passing by the home on public thoroughfares, an officer's leave to gather information is sharply circumscribed when he steps off those thoroughfares and enters the Fourth Amendment's protected areas." *Jardines*, 569 U.S. at 7.

Pointing to parts of the body-cam videos that appear to show the iPhone coming into physical contact with the window of his car, Poller argues that the police engaged in a search

---

[20] Doc. #28-1 at 9 n.7 (citing links and news stories); *see, e.g.,* Bettie Cross, "*Thieves use cell phone cameras to peek through the darkest tint on car windows*," CBS Austin, Aug. 24, 2022, *available at* https://cbsaustin.com/news/local/thieves-use-cell-phone-cameras-to-peek-through-the-darkest-tint-on-car-windows (last accessed July 13, 2023).

because they physically intruded on his car in order to learn what was inside. He is right that a search may occur if the police physically intrude upon a person's car *even in a minor way* for the purpose of acquiring information. Multiple federal appeals courts have so ruled. *See United States v. Dixon*, 984 F.3d 814, 820-21 (9th Cir. 2020) (police insertion of a key into the lock of a car to see if the car belongs to the suspect); *Taylor v. City of Saginaw*, 922 F.3d 328, 332-33 (6th Cir. 2019) (police "chalking" of the tire of a car in order to keep track of whether a car has exceeded its allowed parking time); *United States v. Owens*, 917 F.3d 26, 35 (1st Cir. 2019) (police entry onto driveway of house to touch the hood of a car to check its temperature); *United States v. Richmond*, 915 F.3d 352, 357-59 (5th Cir. 2019) (police tapping a vehicle's tire to see if there is more than just air inside).

But the problem for Poller is that he does not contend that any physical trespass on his car was *necessary* for law enforcement to see the contraband inside. The body-cam video shows that at times the iPhone came into contact with the car while at other times the iPhone did not come into contact with the car but nonetheless still revealed the contents inside merely by being held very close to the window of the car. At various points the detective lifted the phone off the car window without interrupting his ability to see through the tint.[21] Poller's counsel conceded at oral argument that it was not necessary for the iPhone to be in physical contact with the car in order for the camera function to allow the police to see the contents inside.[22]

The body-cam video also shows that one of the detectives was able to see inside the car without the assistance of an iPhone by cupping his hands around his eyes and looking through the windshield. Although it is a fair inference that the detective's body was touching the side of

---

[21] *See* DxC at 16:08:26-28, 16:08:50; 16:09:12.
[22] I offered Poller an opportunity for an evidentiary hearing, Doc. #33, but he disclaimed any factual disputes, and his concession that the police could have seen inside the car using the iPhone's functionality without touching the car made it unnecessary to conduct an evidentiary hearing.

the car as he attempted to look through the windshield, it is apparent from the video that he did not place his hands or his face on the windshield in order to see inside.[23]

In similar circumstances where law enforcement have engaged in minor physical contact with a car but where the contact was incidental and not necessary to the acquisition of the disputed information or evidence, courts have denied motions to suppress. *See United States v. Anderson*, 2023 WL 2140156, at *8 (D. Kan. 2023) (where "the government gained no information through . . . contact with the car," then the "contact was incidental, and no more objectionable than if an officer brushed up against the side of a vehicle during a traffic stop"); *United States v. Macias*, 2018 WL 6990793, at *5 (where a police officer "could have seen the alleged [contraband] had he not cupped his hands over his eyes and touched the car's window," then the fact of the officer's "physical contact with the car" does not turn his actions into an illegal search), *rep. and rec. adopted*, 2018 WL 6600271 (E.D. Wis. 2018). These holdings are in keeping with the general rule that courts do not suppress evidence if a violation of the Fourth Amendment was not the cause of the police's acquisition of the challenged evidence. *See Hudson v. Michigan*, 547 U.S. 586, 592 (2006); *United States v. Rosenow*, 50 F.4th 715, 736 (9th Cir. 2022).

In short, to the extent that the police came into physical contact with the car for the purpose of acquiring information about what was inside, I agree with Poller that they conducted a "search" within the meaning of the Fourth Amendment. But because the record does not show that this physical contact was necessary for the police to learn what was inside the car, I decline to suppress the evidence of what the police saw and eventually seized.

---

[23] DxC at 16:09:54-16:10:06.

*Other arguments*

Poller argues in his motion to suppress that his car was parked within the curtilage of his apartment.[24] But the body-cam video conclusively shows that the car was parked on a roadway outside a multi-unit apartment complex, and at oral argument Poller sensibly withdrew his claim that the police intruded on his curtilage when they approached the car. *See United States v. Jones*, 893 F.3d 66, 72-73 (2d Cir. 2018) (no expectation of privacy in parking lot where defendant did not have right to exclude third parties and that was accessible to other tenants of a shared apartment building).

Poller also complains that the detectives failed to disclose their use of the iPhone when they subsequently applied for a warrant to search the car.[25] But he does not point to any precedent suggesting that an affiant to a search warrant must disclose or discuss what particular technology was used to learn the facts that establish probable cause. Nor does he explain how the omission of any description about the use of an iPhone undermined the existence of probable cause. A search warrant affidavit cannot be invalidated absent a showing that any inaccuracy or omission was material, *i.e.*, that it affected the existence of probable cause. *See United States v. Lauria*, 70 F.4th 106, 124 (2d Cir. 2023).

## CONCLUSION

For the reasons set forth in this ruling, the Court DENIES the defendant's motion to suppress.

It is so ordered.

Dated at New Haven this 14th day of July 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[24] Doc. #28-1 at 12.
[25] *Id.* at 1, 15-16.